## METZGER *v.* STEED.

Where the heirs at law of a testator file a joint caveat to the probate of his will in solemn form, and a judgment of the court of ordinary is rendered in favor of the propounder, admitting the will to probate, *held:*

(*a*) One of such caveators has a right to enter an appeal from such judgment, by filing an affidavit in forma pauperis, without any of the other caveators joining in such affidavit.

(*b*) Such caveator need not state in such affidavit that the other caveators are unable to pay the costs or give the required bond.

(*c*) Where all of such caveators, or any number thereof less than the whole, in due time simultaneously file separate affidavits in proper form to enter an appeal from such judgment, although the maker of no one of such affidavits states therein the inability of any of the other caveators to pay the costs or give the required security, an appeal is effectually entered, and it is error for the judge of the superior court to which said case is appealed to dismiss such affidavits.

(*d*) Where the affidavits referred to in the preceding note are filed, only one appeal is entered, and only one appeal case should be docketed in the superior court.

Argued January 15,—Decided June 24, 1909.

Appeal. Before Judge Charlton. Chatham superior court. June 8, 1908.

*W. L. Gignilliat* and *Travis & Travis,* for plaintiff in error.

*R. R. Richards,* contra.

HOLDEN, J. An instrument in writing purporting to be the will of Mrs. Exley was offered for probate in the court of ordinary of Chatham County. Twenty-four of the thirty-five heirs of Mrs. Exley, upon whom citations were served, filed a joint caveat to the proceedings. The ordinary rendered a decision admitting such instrument to probate in solemn form as the will of Mrs. Exley. On December 4, 1907, six different papers were lodged with the ordinary, purporting to be the separate appeals of certain caveators, namely: (1) Mary Metzger, the plaintiff in error in the present case, (2) Josie Dawson Wilson, (3) Z. G. Morgan, (4) Marion Morgan and another, (5) Ada Morgan and eight others, (6) Carrie Gnann. All of the six papers above referred to were affidavits in forma pauperis and in the usual form, and were executed and delivered to the ordinary for the purpose of appealing the case to the superior court. The affidavit of Mary Metzger and that of Carrie Gnann are endorsed by the clerk of the court of ordinary as "filed Dec. 4, 1907." The remaining four affidavits bear no endorsements. The six affidavits were fastened together, and the first and the last are the ones marked filed. The defendant in error, who was the propounder of the will, made separate motions in the superior court to dismiss each of said appeals, on the following grounds: (1) Because said appeal has not been entered according to law. (2) Because said appeal does not comply with the law of Georgia in such case made and provided. (3) Because said appeal is contrary to the law in such case made and provided. (4) Because the affidavit in forma pauperis, which is the foundation of said appeal, fails to allege in substance that the other caveators of record who did not appeal from the decision of the court of ordinary were unable owing to their poverty to pay the costs or give the security required by law in said case. (5) Because said affidavit in forma pauperis fails to allege in substance that all of the caveators who have appealed from said decision are, collectively, unable owing to their poverty to pay the costs or give the security required by law in said case. (6) Because the appeal as made does not join as parties the other joint caveators. The court

entered orders dismissing each of the appeals. To each of these judgments the plaintiff in error excepted.

As far as disclosed by the record, each of the appeal affidavits was filed with the ordinary at the same moment of time, and each alleged the inability of the maker or makers of the respective affidavits to pay the costs or give the bond required by law, without referring to the inability of all of the caveators, or of those filing appeal affidavits, to pay the costs or give bond. In the concluding part of the opinion of the able and learned judge who rendered the judgments, it is stated: "I conclude that the appeal should have been joint in all respects, and not having been joint, and there being no authority for consolidation under the circumstances, an order will be prepared dismissing the appeals at bar." Under the judiciary act of 1799, either party dissatisfied with a verdict of a jury might enter an appeal within four days after the adjournment of the court. This act applied only to appeals in the superior and inferior courts, and did not provide for an appeal from any decision of the court of ordinary. By the act of December 7, 1805, the right of appeal from the decisions of the court of ordinary was given; and by the act of December 19, 1823, the right of trial by jury on appeal from the judgment of the ordinary was provided. The title of the act of December 23, 1839 (Acts 1839, p. 142), was "An act to explain and amend the judiciary act of 1799, so far as concerns the granting of appeals in certain cases," and the preamble of this act is as follows: "Whereas a a contrariety of opinion exists among the judges of this State, and a different practice prevails in the different judicial circuits thereof, touching the granting of appeals under certain circumstances; for remedy whereof, be it enacted," &c. The provisions of this act are substantially the same as those now embraced in the Civil Code, §§ 4461, 4462, 4463. One of the main objects of the act of 1839 was to make clear the right of one or more parties to a case to appeal when their coparties refused or failed to do so, and to render it unnecessary for all of the losing parties to join in the appeal. Such right was made plain, as shown by those provisions of the act which now appear in Civil Code, § 4461, as follows: "When there shall be more than one party plaintiff or defendant, and one or more of said parties plaintiff or defendant desires to appeal, and the others refuse or fail to appeal, such

party plaintiff or defendant desiring to appeal may enter an appeal under such rules and regulations as are provided in this code." Under the common law, and under the laws of this State prior to the act of December 27, 1842, parties appealing had to pay costs and give bond. The act of December 27, 1842, providing for appeals in forma pauperis, having been held not to apply to appeals from the court of ordinary (*Adams* v. *Beall,* 60 *Ga.* 325), the act of September 24, 1879, was passed, which gave the privilege of appeal in forma pauperis from decisions of the court of ordinary. Under the Civil Code, §4465, "when any party, plaintiff or defendant, in any suit at law or proceeding in the court of ordinary, shall be unable to pay costs and give security as hereinbefore required," such party shall be permitted to enter his appeal in forma pauperis from any decision of such court. See *Fite* v. *Black,* 85 *Ga.* 413 (11 S. E. 782). Under section 4461, supra, if one or more of the losing parties desires to appeal, "and the others refuse or fail to appeal," the former may enter an appeal under such rules and regulations as are provided in the code. One of the rules and regulations providing for appeals; contained in the code, is that embraced in section 4465, where it is provided, as above set forth, that appeals in forma pauperis may be had from any de‹ cision of the court of ordinary. Under the two sections above referred to, when one or more parties, plaintiff or defendant, desire to appeal from any decision of the court of ordinary, and "the others refuse or fail to appeal," the former may enter such appeal, and may do so without the payment of cost or giving of security. We do not agree with the contention that under section 4465 there can be no appeal in forma pauperis from any decision of the court of ordinary unless all the losing parties on the same side of the case having an equal interest in the result join in the appeal. Some of the parties might refuse to appeal, or be so far away that it would be impossible to join in an appeal within. the prescribed time of 4 days, and the right of appeal to others be defeated if all were required to join in an appeal.

It is urged by the defendant in error, and was held by the court below, that those desiring to appeal should have joined in one affidavit in forma pauperis, and that they could not simultaneously file separate affidavits. We can not agree to this contention. The main purpose of the act of 1839 was to confer on each of the

losing parties the right of appeal where the others failed or refused to appeal. If it were true that where some of the losing parties appeal in forma pauperis, they must all join in one affidavit, then *any one* of the losing parties could defeat the right of the others to appeal by refusing or failing to join with the latter in an affidavit, and simultaneously or subsequently filing a separate and distinct affidavit in forma pauperis to appeal; and the purpose of the act of 1839 would thus be defeated. It is urged as an argument against the position we assume, that those desiring to appeal might not be able to say that in their combined capacity they could not pay the costs or give the bond, but that each one could truthfully say that he could not alone do this; and that the object of the law was that if those desiring to appeal could in their joint capacity pay the costs, they should do so, or, if they could not pay the costs, an affidavit should be made that they collectively could not do so. If this was the purpose of the law, we do not think that much would be accomplished to effectuate it by making a holding different from the one we are now making; because if those desiring to appeal were able together to pay the costs or give the bond, but were not each separately able to do this, they could have an appeal entered by having one of such parties to make his affidavit in forma pauperis, and by having all the others to fail or refuse to join therein or to file any affidavit to appeal. Such affidavit by any one of the parties in a case of the kind under consideration would make good an appeal of the case and would carry up the whole record, and to the case after it was appealed all of the caveators would be parties in the court to which it was appealed. We do not construe the statute to mean, as urged by counsel for defendant in error, that if one of the parties desires to appeal in forma pauperis, his affidavit must state the inability of all the other parties to pay the costs or give the bond. It would be putting on such party, in some cases, an impossible and unjust burden for his conscience to carry. None of the caveators in this case might be able conscientiously to swear that the remaining 23 caveators, singly or collectively, were unable to pay the costs or give the bond. If some of the 24 caveators resided at any great distance from those appealing, it might be impossible for some of them to know or to ascertain the financial condition of the others within the four days permitted within which an appeal can be en-

tered. If one of the caveators, unable to pay the costs, desires to appeal, and the others do not and refuse to appeal, if those not desiring to appeal have the money with which to pay the costs and make this fact known to the one desiring to appeal, the latter could not conscientiously say that the others could not pay the costs or give the bond. To say that in such case the party desiring to appeal could not do so without making an affidavit that all of his coparties collectively were unable to pay the costs or give the bond, would put it in the power of the other coparties to defeat the right of appeal on the part of the party desiring to enter it.

This case can not be analogized to one where a member of a partnership makes an affidavit to obtain a certiorari, and is required, as held in the case of *Marlow* v. *Hughes Lumber Co.; 92 Ga.* 554 (17 S. E. 922), to swear that the firm is unable to pay the cost and give the bond required. There the party making the affidavit for the partnership was a member thereof, but it was the firm itself certioraring the case. It was ruled in *Livingston* v. *King,* 2 *Ga. App.* 178 (58 S. E. 395), that a partnership making an appeal through one of its members can not maintain it by an affidavit in forma pauperis, unless the member entering the appeal swears that the partnership is unable to pay the costs or give the security. This presents a situation entirely different from one where all of the parties defendant to the suit have no interests in common except that they belong to a class which will share alike in the results of the litigation, not as members of a firm which constitutes the sole defendant, but as individuals with independent interests. In the present case there is not one defendant only, but as many defendants as there are caveators. In a case which arose before the adoption of the code, and under a statute which did not include other trustees with executors and administrators in dispensing with the ordinary requisites in entering appeals. (*Scott* v. *Turpin,* 30 *Ga.* 964), it was held that a trustee appealing a case in his representative capacity can not make such an appeal by simply swearing that he individually is unable to pay the costs, or give the security; and this decision is cited by counsel for defendant in error in support of the position that one of the parties appealing the case should swear that all of the others are unable to pay the costs or give the security. It was also held in *Barfield* v. *Hartley,* 108 *Ga.* 435 (33 S. E. 1010), that "An affidavit filed

by an administrator for the purpose of taking a case to the Supreme Court in forma pauperis should allege the inability of the estate he represents to pay costs. His personal inability to do so is of no consequence." These cases are entirely dissimilar to the one we are considering. If one of the caveators in the instant case desires to enter an appeal in forma pauperis, he is in no sense a trustee for the other parties, nor their representative in *any* fiduciary capacity. He is a party to the case and interested therein solely as an individual, and is undertaking to assert a right for his own benefit and does so, though in so doing he incidentally carries the other parties with him, whether they desire to go or not, and whether it is for their benefit or not.

It is urged, as a reason why an appeal should not be entered as in the case at bar, that the six separate and distinct affidavits of those desiring to appeal would entail six trials in the court to which the case was appealed, and that there is no rule of law permitting the consolidation of the cases by the court of its own motion. The question of the right of the court to consolidate six appeal cases and have only one trial does not enter into the consideration of any of the questions before us. There is and can be but one appeal, and there should be, in the court to which the case is appealed, but one case docketed. The case would remain in court as long as one of the affidavits in forma pauperis, filed in proper form by the proper party and within the time prescribed, was not dismissed or withdrawn. If all of the affidavits in forma pauperis were dismissed by the court except one, the case would be in court and all of the other parties would be parties thereto, though they did not have in court any affidavits in forma pauperis, or bonds appealing the case. This is true for the reason that an appeal by one party to a controversy of this kind carries up the whole case and record and all of the coparties, who have the same interests and rights in the case on appeal as the party making the affidavit which had the effect of appealing the case. *Murray* v. *Marshall,* 106 *Ga.* 522 (32 S. E. 634). The party making the affidavit appealing the case could not of his own motion, after the case was thus appealed, dismiss it and thereby prejudice the rights of the other parties thereto, whose rights in the case on appeal, after the appeal is entered, are equal to those of the party making the appeal. The six affidavits, filed simultaneously with the ordi-

nary, should have been transmitted with the record to the superior court and the case docketed as one case. It matters not how many of the parties simultaneously filed their respective affidavits with the ordinary in forma pauperis to appeal the case; there was but one case on appeal. It is immaterial whether this case is treated as appealed by one or all of the affidavits filed, as in either event all of them would be parties to the case on appeal. If all of the caveators filed appeal affidavits and the caveators designedly or accidentally filed them simultaneously, and if either one of the affidavits is in accordance with the law, a valid appeal is entered. See, in this connection, *Weeks* v. *Sego,* 9 *Ga.* 199, 205. There is no law requiring those appealing to do so in one joint affidavit when they desire to appeal in forma pauperis, nor is there any law requiring those appealing by giving bond to appeal by giving a joint bond; but where there are several parties on the same side of the case having the right of appeal from a judgment, all or any number less than all can appeal by each one simultaneously filing an affidavit in forma pauperis, or by giving the required bond. None of those simultaneously filing appeal affidavits failed or refused to appeal. Those who did not do this failed or refused to appeal in this case. To rule that the affidavit of one in forma pauperis to appeal, filed with the ordinary, could not effectuate an appeal if another, having the same right, were to "lie in wait" and hand the ordinary his affidavit in forma pauperis to appeal at the same time, would give the power to one to defeat the right of appeal of another having equal rights and interests. Where the separate affidavits in forma pauperis to appeal of two or more of the losing parties reach the ordinary simultaneously by intention of the parties, or by accident and without their intention simultaneously to file them, they should not be dismissed. We think the court committed error in making the rulings complained of; and the judgment is                    *Reversed. All the Justices concur.*